**No. 24-30628**

———————————————————————

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————————————

CHANDRE' CHANEY,
*Plaintiff – Appellant,*

v.

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND MECHANICAL COLLEGE THROUGH
LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER
*Defendant – Appellee.*

———————————————————————

*On Appeal from the United States District Court for the
Middle District of Louisiana
No. 3:22-CV-00016*

———————————————————————————————————————

**CORRECTED BRIEF OF APPELLEE
LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER**

———————————————————————————————

Respectfully Submitted,

**LIZ MURRILL**
**ATTORNEY GENERAL**
RENEE G. CULOTTA, T.A. (LA No. 24436)
Special Assistant Attorney General
**FRILOT L.L.C.**
1100 Poydras Street, Suite 3700
New Orleans, LA  70163
Telephone: 504-599-8085
Facsimile: 504-599-8267
Email:      rculotta@frilot.com

January 15, 2025              **COUNSEL FOR APPELLEE**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellee: | Counsel for Appellees: |
| --- | --- |
| **The Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College, through the Louisiana State University Health Sciences Center** | **Renee Culotta, Frilot L.L.C., New Orleans, LA** |

| Appellant: | Counsel for Appellants: |
| --- | --- |
| **Chandre' Chaney** | **Joseph A. Smith, III,  Smith Law Firm, Baton Rouge, LA** |

*/s/ Renee G. Culotta*
Counsel for Appellee

ii

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant-Appellee Louisiana State University Health Sciences Center (LSUHSC) does not request oral argument. This appeal does not present any novel, complex or undecided issues of law. Instead, the issues are straightforward and involve the application of well-established legal precedents. Thus, oral argument is unnecessary to aid the Court's decisional process.

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTERESTED PERSONS**…………...……………...…ii

**STATEMENT REGARDING ORAL ARGUMENT**……………………….iii

**TABLE OF AUTHORITIES**……………………………………………..v

**STATEMENT OF THE CASE**…………………..…………………………1

    **A. Chaney's Employment with LCP**………………………...…1

        **1. Chaney's Displeasure with LCP's Working Environment**……….2

        **2. Chaney's Conflict with LCP Coworkers over the Giant Inflatable Colon**……………………………………………………3

        **3. Chaney's Offense to Alleged "Micro-Aggressions"**………………4

        **4. Chaney's Issues Managing Subordinate Employees**……………...6

    **B. Chaney's Termination from LCP**………………………………9

    **C. Chaney's Claims**……………………………………………11

**SUMMARY OF ARGUMENT**……………………………………………12

**ARGUMENT**…………………………………………………………….14

    **I. Summary Judgment is Proper as to Chaney's Race Discrimination and Retaliation Claims**……………………………………………..14

        **A. Chaney's Race Discrimination Claim**………………………...14

            **1. Chaney Fails to Submit Evidence of Disparate Treatment to Establish Pretext**……………………………………………17

            **2. Chaney Fails to Prove LSUHSC's Justification is Unworthy of Credence**……………………………………………………19

            **3. LSUHSC's Evidence Supports that Chaney was Not Terminated Because of her Race**…………………………24

        **B. Chaney's Retaliation Claim**……………………………………25

    **II. Chaney has Forfeited Her Race Harassment Claim**………………27

**CONCLUSION**……………………………………………………………27

**CERTIFICATE OF COMPLIANCE**……………………………………29

**CERTIFICATE OF SERVICE**…………………………………………...30

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422 (5th Cir. 2017)…....……………..17

*Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500 (5th Cir. 2024)……....…14, 27

*Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471 (5th Cir. 2005)……...……....…16

*Cincel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)……………………….…….......27

*Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899 (5th Cir. 2000)………....16

*Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315 (5th Cir. 1997)……………………………………………………………24

*Guthrie v. Tifco Indus.*, 941 F.2d 374 (5th Cir. 1991)………………………….…15

*Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363 (5th Cir. 2021)………………...25

*Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)…………………….…15,16

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009)…………………..…17

*Long v. Eastfield Coll.*, 88 F.3d 300 (5th Cir. 1996)…………….…………….…26

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)……………………………………………………………………………14

*Nieto v. L&H Packing Co.*, 108 F.3d 621 (5th Cir. 1997)……………………....25

*Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507 (5th Cir. 2001)………………………………………………………………………………17

*Owens v. Circassia Pharms., Inc.*, 33 F.4th 814 (5th Cir. 2022)....15, 16, 17, 25, 26

*Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206 (5th Cir. 2004)……….17,18

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000))……………………………………………………………16

*Rollins v. Home Depot, USA*, 8 F.4th 393 (5th Cir. 2021)……………….18, 22, 23

*Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990 (5th Cir. 2022)……14, 26

*Sanders v. Christwood*, 970 F.3d 558 (5th Cir. 2020)…………….……………...14

*Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002)………………..17

*Thomas v. Johnson*, 788 F.3d 177 (5th Cir. 2015). ……………………………15

*Wallace v. Methodist Hosp. System*, 271 F.3d 212 (5th Cir. 2001)…………....…18

*Watkins v. Tregre*, 997 F.3d 275 (5th Cir. 2021)………………………………15,16

## <u>Statutes</u>

42 U.S.C. § 1981……………………………………………………………...11, 14

42 U.S.C. § 2000e-2(a)(1)…………………………………………………………14

**STATEMENT OF THE CASE**

Louisiana State University is the flagship public university for the State of Louisiana, with campus locations including the Health Sciences Center in New Orleans (hereafter referred to as "LSUHSC").  Plaintiff-Appellant Chandre' Chaney ("Chaney"), a Black female, was employed by Defendant-Appellee LSUHSC for just over one year—from September 1, 2019 through September 11, 2020—as the Program Manager for the Louisiana Colorectal Health project (also referred to as the colorectal grant), within the Louisiana Cancer and Prevention Control Program ("LCP") at LSUHSC.[1] This lawsuit and appeal stems from Chaney's termination from the LCP.

**A. Chaney's Employment with LCP**

Chaney was interviewed and hired to work at the LCP by Dr. Donna Williams, Director of the LCP, and Dr. Randi Kaufman, Assistant Director of LCP and the Principal Investigator for the colorectal grant.[2] Both Dr. Williams and Dr. Kaufman are white females. Chaney worked on the colorectal grant and reported to and was directly supervised by Dr. Kaufman.[3]

There were four other managers at LCP the same level of Chaney: Jasmine Meyer ("Meyer"), a white female, who was the Program Manager of the Breast and

---

[1] ROA.165, 168-169, 198, 390, 394.
[2] ROA.165-167, 174-177, 186-187,421,425.
[3] ROA.166, 174.

1

Cervical Health Program; Mikal Giancola ("Giancola"), a white male, who was the Program Manager of the Comprehensive Cancer Control Program; Laura Ricks ("Ricks"), a white female, who was the Communications Manager; and Toya Shanklin-Jackson ("Shanklin-Jackson"), a Black female, who was the Business Manager.[4]

### 1. Chaney's Displeasure with LCP's Working Environment

Chaney's short tenure at LSUHSC was riddled with issues.

Chaney did not like the work environment at the LCP. She described it as "cronyism,"[5] as she believed that many of her coworkers received preferential treatment and were not held accountable because they had previously been students of Dr. Williams and Dr. Kaufman in LSUHSC's School of Public Health.[6] Additionally, Chaney did not like the "laissez faire" work environment at LCP[7] or the "laissez faire," hands off management style of Dr. Kaufman[8], which stood in stark contrast to Chaney's strict, "by the book"[9] and "stickler"[10] work style. Chaney

---

[4] ROA.177.
[5] ROA.431.
[6] ROA.182. Meyer, Giancola, Ricks, Payne and Fraser were all previous students of Dr. Williams and Dr. Kaufman. ROA.179, 181-182, 431.
[7] ROA.230.
[8] ROA.306.
[9] ROA.193.
[10] ROA.273.

admits this had nothing to do with race, it was just different styles of working.[11]

Overall, Chaney did not feel that LCP was a well-functioning team.[12]

### 2. Chaney's Conflict with LCP Coworkers over the Giant Inflatable Colon

Chaney also became embroiled in workplace conflict, most notably, an incident concerning the storage of a giant inflatable colon. LCP owns a large, interactive colon display weighing over 100 pounds which, when inflated, allows individuals to walk through it to view the inside of a colon.[13] The storage of the giant colon became an issue.[14]

On October 8, 2019, Chaney requested a key to the office (occupied by Whitney Marmer, a white female), where the inflatable colon was being stored while not in use.[15] Ms. Marmer's initial response to the email was that she did not want to distribute additional keys for her office, indicating that there was "expensive equipment" being stored there.[16] In fact, no employees had keys to other employees' offices.[17] Chaney (and other Black employees) found Marmer's statement racially

---

[11] ROA.274.
[12] ROA.272.
[13] ROA.674.
[14] Id.
[15] ROA.441,674.
[16] ROA.440,674.
[17] ROA.678.

offensive because, they believed she was insinuating they would steal the expensive equipment.[18]

What followed was an exchange of "heated" emails, the involvement of numerous employees, and a situation where "emotions were high."[19] Within an hour of her initial email response, Marmer capitulated and agreed to having additional keys made for her office; nevertheless, Chaney was unsatisfied.[20] The issue was raised later at the weekly managers' meeting; Chaney again felt racially offended when Dr. Williams cut-off the discussion and she was not permitted to speak about the incident (however, other employees, both Black and white, were permitted to address the situation).[21]

### 3. Chaney's Offense to Alleged "Micro-Aggressions"

Chaney was also offended by what she deemed were "micro-aggressions" by her coworkers and supervisors.[22] To be sure, no LCP employee ever made facially discriminatory, offensive or derogatory comments, epithets, slurs or jokes.[23] Nevertheless, Chaney found their comments and conduct to be racially offensive.

---

[18] ROA.416, 674-675.
[19] ROA.440-452, 676.
[20] ROA.442, 676.
[21] ROA.669.
[22] ROA.658.
[23] ROA.658.

4

Chaney was annoyed by her coworkers' off-topic, random conversations before meetings, which she felt was a waste of time and inappropriate.[24]  In one instance, a coworker shared that she had been arrested and asked Chaney if she had been arrested.[25]  Likewise, during a general conversation about marijuana use (where various employees were discussing their own use of marijuana), a coworker asked Chaney whether she had used marijuana.[26] During a Zoom conference, Dr. Kaufman complimented Chaney's home.[27] Chaney found all of these instances to be racially offensive.

After her termination, a coworker offered Chaney advice about applying for government assistance; again, Chaney testified she was offended by the offer of help.[28] Finally, although LCP employees "freely and openly" discussed topics including implicit bias and racism in the context of their work in public health[29], Chaney found Dr. Kaufman's circulation of an article regarding "white supremacy culture"[30] and a coworker's proposed equity plan for LCP[31] racially offensive.[32]

---

[24] ROA.679-680.
[25] ROA.678-679.
[26] ROA.680.
[27] ROA.663-664.
[28] ROA.209-211.
[29] ROA.163-164, 661.
[30] ROA.484- 492, 661.
[31] ROA.662.
[32] ROA.164, 659-661, 662-663.

### 4. Chaney's Issues Managing Subordinate Employees

Chaney also faced issues in managing her subordinates. At the beginning of her employment, Chaney directly supervised two employees: Megan Fraser, a white female, and Nick Payne, a white male.[33] This was the first time Chaney had directly supervised any employees.[34] Chaney had a "rocky"[35] relationship and difficulty managing them. Chaney admits there was a "lack of trust" between them, explained by the fact that both Fraser and Payne believed that Chaney was blocking their raises.[36] The lack of trust between Chaney and her subordinate employees resulted in numerous misunderstandings, misattributions and hurt feelings.

For instance, Chaney was upset and felt undermined by Dr. Kaufman's decision to allow Fraser and Payne to review and comment upon the funding of mini-grants to healthcare clinics, a decision that Chaney had made; further, she did not feel that she should have to share the full budget of the colorectal grant with her subordinate employees.[37]

As for issues with Megan Fraser, Chaney had difficulty convincing Fraser to go on a four-day work trip to visit clinics around the State, and, when Fraser finally agreed to go, she forgot her wallet, leaving Chaney to pay her expenses (for which

---

[33] ROA.178-180.
[34] ROA.193.
[35] ROA.294.
[36] ROA.190-191, 196, 271-272, 295, 305, 412, 679.
[37] ROA.666-667.

she was reimbursed by LSUHSC).[38]  In an another instance, Fraser took five days of sick leave and, upon her return, Chaney demanded a doctor's note from Fraser before she would approve the leave.[39] Chaney mistakenly thought that LSUHSC's policy was to require a doctor's note for sick leaves after three or more days; in fact, LSUHSC's written policy provides for a doctor's note only after ten days of leave.[40] The issue escalated when Fraser told Chaney she did not have a doctor's note and that Chaney could fire her or pay for the doctor's visit to get the note.[41]

As for Nick Payne, he was promoted to an Evaluation Manager position in February 2020, at which time he began to split his time between three different grant projects: the colorectal grant (supervised by Chaney); the breast and cervical grant (supervised by Meyer); and the comprehensive cancer grant (supervised by Giancola).[42]  Thereafter, in April or May, Chaney complained that Payne was no longer completing his responsibilities for the colorectal grant.[43] One such duty was completing a weekly COVID report (a summary of duties performed during the week while working remotely) to be sent to his supervisor and Shanklin-Jackson.[44] Beginning on May 18, 2020, Payne completed the COVID report, but instead of

---

[38] ROA.656.
[39] ROA.657-658.
[40] ROA.459.
[41] ROA.430, 658.
[42] ROA.235-242.
[43] ROA.643.
[44] ROA.410, 636.

sending it to Chaney, he sent it to Meyer and Shanklin-Jackson.[45] On June 1, 2020, Chaney sent an email to Payne requesting his report[46]; after Payne sent the report to Chaney, she then instructed him to copy her on his email sending his COVID reports for her "record keeping purposes."[47] Payne replied to this email, and, although he agreed to send the report, he asked Chaney to elaborate because he understood that the report should be sent to his direct supervisor (whom he considered to the Meyer).[48] The next day, Payne sent an email to Chaney taking their one-on-one meetings off of his calendar and explaining that he needed to focus on his new role as the Evaluation Manager.[49] Chaney forwarded all of the emails to Dr. Kaufman.[50] Dr. Kaufman sided with Payne—stating that he did not need to send Chaney the COVID reports and reminding Chaney that she was "almost done with him."[51] Chaney expressed that she was "really disappointed in how this situation is being handled."[52]

As a result of these instances, Dr. Kaufman suggested (but did not require) Chaney consult with the Campus Assistance Program (CAP) on dealing with

---

[45] ROA.643-644.
[46] ROA.644.
[47] *Id.*
[48] *Id.*
[49] ROA.646.
[50] ROA.647.
[51] ROA.648.
[52] ROA.652.

difficult colleagues.[53]  Despite the other (white) employees from LCP were referred to and/or attended CAP (including Dr. Kaufman and Dr. Williams), Chaney felt that the referral to CAP made to Black employees was more "punitive."[54]

### B. Chaney's Termination from LCP

Dr. Kaufman and Dr. Williams made the decision to terminate Ms. Chaney as a part of a reorganization and realignment of LCP.[55] There were several factors leading to this decision.

The Colorectal Health Project was funded by a grant from the Centers for Disease Control and Prevention ("CDC"). In 2019, the CDC grant was approximately $800,000, but when it was renewed in 2020, the grant was reduced to $600,000, thus the colorectal grant had a $200,000 reduction in funding.[56]

Additionally, in August of 2020, Dr. Kaufman announced that she would be reducing her work to part-time and would be retiring in April of 2021.[57] In anticipation of Dr. Kaufman's retirement, Dr. Williams and Dr. Kaufman hired Dr. Reni Elewonibi, a Black female, to work with LCP.[58]

---

[53] ROA.636, 652.
[54] ROA.652-654.
[55] ROA.421, 425, 429.
[56] ROA.172-173, 422, 425-426.
[57] ROA.202, 422, 426.
[58] ROA.201, 422, 426.

Finally, as of August 2020, Chaney was only supervising one employee, Megan Fraser. Again, by August of 2020, Payne had already transitioned to his new position as the Evaluation Manager.[59]

The confluence of these events (the $200,000 shortfall in the grant, the impending retirement of Dr. Kaufman and the hiring of Dr. Elewonibi, and the fact that Chaney only supervised one employee) led to Dr. Williams and Dr. Kaufman's decision to reorganize and realign the Colorectal Health project and to eliminate Chaney's position, which they found to be an unnecessary layer of "middle management."[60] Instead, Dr. Elewonibi replaced Dr. Kaufman as the Principal Investigator for the colorectal grant and she assumed Chaney's duties, including directly supervising Fraser.[61] Chaney's position as the Program Manager was functionally eliminated, has never been filled, and is no longer included on LCP's organization chart.[62] Chaney's position was not the only position that has been functionally eliminated (and not refilled) as a part of the reorganization of LCP.[63]

Chaney has truthfully and consistently been provided the reason for her termination; LSUHSC has never wavered or changed the reason for her termination. First, Dr. Kaufman and Dr. Williams held a Zoom conference with Chaney to inform

---

[59] ROA.422, 426.
[60] ROA.422, 426.
[61] ROA.202, 422, 426, 688.
[62] ROA.406-407, 422, 426, 514.
[63] ROA.423, 426.

her of the termination decision; Chaney was informed during that call that her position was being eliminated for the reasons maintained by LSUHSC.[64]  Indeed, the reason for her termination was contained in her PER form[65], explained to the managers at a management meeting[66] and provided to the EEOC in LSUHSC's position statement[67]. LSUHSC has never deviated from its legitimate, non-discriminatory and non-retaliatory reason for Chaney's termination.

### C. Chaney's Claims

In her complaint, Chaney alleges LSUHSC violated Title VII of the Civil Rights Act and 42 U.S.C. § 1981 by: (1) discriminating against her on the basis of her race; (2) subjecting her to hostile work environment harassment on the basis of her race; and (3) wrongfully terminating her in retaliation for engaging in alleged protected activities.[68] LSUHSC answered Chaney's complaint[69] and, in due course, after discovery had been completed, filed a motion for summary judgment seeking dismissal of all claims against it.[70] On December 20, 2023, the District Court issued its Ruling[71] and Judgment[72] granting LSUHSC's motion for summary judgment.

---

[64] ROA.200,688,689.
[65] ROA.203-204, 517.
[66] ROA.749-750.
[67] ROA.434.
[68] ROA.20
[69] ROA.66-80.
[70] ROA.109-110.
[71] ROA.1449-1476.
[72] ROA.1477.

Chaney filed a Motion to Amend or Alter the Judgment[73], essentially seeking a rehearing of the District Court's decision to grant LSUHSC's motion for summary judgment on her race and retaliation claims.  On September 4, 2024, the District Court issued its ruling denying Chaney's motion to alter or amend the judgment.[74] Thereafter, Chaney filed this appeal.[75]

## SUMMARY OF ARGUMENT

Chaney's race discrimination and retaliation claims against her employer, LSUHSC, were properly dismissed by the district court and this Honorable Court should affirm the dismissal of these claims.

As for her race discrimination claim, under the familiar *McDonnell Douglas* framework, Chaney met the low threshold to establish a prima facie case of race discrimination. LSUHSC proffered a legitimate, nondiscriminatory reason for Chaney's discharge: In August 2020, Dr. Williams and Dr. Kaufman, the same individuals who had hired Chaney a year before her separation, decided to reorganize and realign the department by eliminating Chaney's position. Their decision was well supported because: (1) the CDC funding for the colorectal grant that Chaney worked on had been reduced by $200,000; (2) at the time of her separation, Chaney was a "middle manager" and was only supervising one

---

[73] ROA.1480-1483.
[74] ROA.1523-1530.
[75] ROA.1531.

employee; and, (3) a recent new hire, Dr. Elewonibi, was able to take over as the Principal Investigator (for Dr. Kaufman, who was retiring) of the grant and assume all of Chaney's duties. Thus, the elimination of Chaney's position resulted in a cost savings to LSUHSC. Chaney lacks sufficient evidence to establish LSUHSC's legitimate reason for her termination was pretext for race discrimination. This is especially true because the "same actor" inference applies and because Chaney was replaced by Dr. Elewonibi, a member of her same protected classification.

Likewise, the district court correctly granted LSUHSC's motion for summary judgment as to Chaney's retaliation claim. The district court held Chaney established a prima facie case of retaliation, LSUHSC proffered a legitimate, non-retaliatory reason for her termination, and Chaney failed to adduce sufficient evidence that "but for" her protected activity, she would not have been terminated. Aside from the close timing of her termination following her protected activity, Chaney had no evidence that LSUHSC's reason for her termination was false or unworthy of credence or that she would not have been terminated if she had not engaged in protected activity.

Chaney has forfeited her hostile work environment claim because she failed to brief any aspect of it in her initial brief filed with this Court.

## ARGUMENT

**I.    Summary Judgment is Proper as to Chaney's Race Discrimination and Retaliation Claims**

**A. Chaney's Race Discrimination Claim**

It is an unlawful employment practice for an employer "to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of . . . race." 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981. Direct evidence of discriminatory intent—that an employee was fired because of her protected status—is rare, so "an employee ordinarily proves her claim through circumstantial evidence." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). When using circumstantial evidence, claims are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Courts analyze employment discrimination claims arising under both 42 U.S.C. § 1981 and Title VII on this basis. *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 506 (5th Cir. 2024); *Sanders v. Christwood*, 970 F.3d 558, 561 n.7 (5th Cir. 2020).

Under *McDonnell Douglas*, a plaintiff bears the initial burden to establish a prima facie case of discrimination. If she does so, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. If the defendant can provide such a reason, then any presumption of discrimination

14

disappears, and the burden shifts back to the plaintiff to "produce substantial evidence indicating that the proffered legitimate, nondiscriminatory reason is a pretext for discrimination." *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021); *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

In order to establish a prima facie case of race discrimination, Chaney must show that (1) she belongs to a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside of her protected group or a similarly situated employee outside of her protected group was treated more favorably. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022). There is no disagreement that Chaney met the "very minimal" threshold necessary to make a prima facie case. *Id.* (citing *Guthrie v. Tifco Indus.*, 941 F.2d 374, 377 (5th Cir. 1991). The district court held that Chaney established a prima facie case of race discrimination[76]; neither party is challenging this portion of the district court's ruling on appeal.

The district court also held that LSUHSC proffered a legitimate, nondiscriminatory reason for terminating Chaney.[77] Again, neither party is challenging this holding on appeal.

---

[76] ROA.1462.
[77] ROA.1463.

Instead, "[p]retext is the crux of this appeal." *Owens*, 33 F.4th at 826. Therefore, in order to defeat summary judgment, Chaney must present "substantial evidence" that LSUHSC's asserted reason for terminating her is pretext for illegal discrimination. *Id.* (citing *Watkins*, 997 F.3d at 283). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Laxton*, 333 F.3d at 579).

Chaney may meet her burden through circumstantial evidence, including evidence of disparate treatment or evidence tending to show that LSUHSC's "explanation is unworthy of credence." *Id.* (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). However, because the federal anti-discrimination laws do not transform federal courts into human resources managers, the inquiry is not whether LSUHSC made a wise or even correct decision to terminate Chaney. *Id.* (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)). Instead, "[t]he ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." *Id.* (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)). Thus, Chaney's evidence must be of sufficient "nature, extent, and quality" to permit a jury to reasonably infer discrimination. *Id.* Therefore, even if Chaney provides

sufficient evidence for a jury to disbelieve LSUHSC's explanation for her termination, that is not necessarily enough. Employers are "entitled to be unreasonable" in terminating their employees "so long as [they] do[ ] not act with discriminatory animus." *Owens*, 33 F.4th at 826 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). Thus, it is Chaney's burden to create a fact dispute as to reasonableness that could give rise to an inference of race discrimination. *Id.*

### 1. Chaney Fails to Submit Evidence of Disparate Treatment to Establish Pretext

"To show disparate treatment, [a plaintiff] must identify such comparators and 'produce ... evidence that they were similarly situated employees.'" *Owens*, 33 F.4th at 827.  The 'similarly situated' prong requires a Title VII claimant to identify at least one coworker outside of his protected class, referred to as a comparator, who was treated more favorably "under nearly identical circumstances." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001)). "Critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citing *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004)).  "If the 'difference between the plaintiff's conduct and that of those alleged

to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Id.* (quoting *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 221 (5th Cir. 2001)).

Chaney has not provided evidence of a similarly-situated comparator for the purposes of establishing pretext.[78] For the first time, in her brief to this Court[79], Chaney seems to argue that Meyer, who was a Program Manager at the same management level as Plaintiff, is a comparator because she was not terminated due to LCP's restructuring and realignment. However, Chaney lacks any evidence to support her argument that Meyer was truly similarly situated in nearly all respects. There is no evidence that Chaney and Meyer were working under nearly identical circumstances. Indeed, to create an issue of fact as to pretext, Chaney would need evidence that Meyer's grant (for the Breast and Cervical Health program) from the CDC was also reduced by $200,000; Meyer was only supervising one employee; and, that Dr. Elewonibi would be able to assume Meyer's duties. None of that is true.

---

[78] The district court found that Meyer was a comparator to Chaney solely for the purpose of Chaney's ability to establish her prima facie case. LSUHSC maintains that Meyer was not a proper comparator to Chaney for any purposes, however, LSUHSC did not and does not contest that Chaney could satisfy her burden on establishing a prima facie case because the threshold for making a prima facie case is so low.

[79] Chaney did not argue that Meyer was a comparator for purposes of pretext in her opposition to summary judgment to the district court, and, therefore, this argument should be forfeited. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal.")

As the organizational chart submitted by LSUHSC demonstrates[80], Meyer supervised at least four employees, a factor which alone differentiates her from Chaney. Therefore, Chaney cannot rely upon the fact that LSUHSC did not eliminate Meyer's position as evidence of pretext.

### 2. Chaney Fails to Prove LSUHSC'S Justification is Unworthy of Credence

Chaney argues LSUHSC's proffered reason for her termination is unworthy of credence for a variety of reasons: (1) her salary was included in the budget of the grant and the CDC was not informed of Chaney's termination, which was required because she was a "key" employee; (2) during a managers' meeting after Chaney's termination, Dr. Williams stated that the managers should tell people Chaney was terminated due to restructuring, and one manager, Shanklin-Jackson, believed this was a "lie"; (3) before Chaney's employment with LSUHSC, Shanklin-Jackson previously experienced an incident at LSUHSC where she was called a racial epithet; (5) Shanklin-Jackson's testimony that Dr. Kaufman told her that Chaney's termination was Dr. Williams's fault because Dr. Williams "did not care for Chaney"; and (6) Chaney received successful performance evaluations prior to her termination. Each argument is addressed, but none is successful at establishing pretext.

---

[80] ROA.514.

Chaney first argues that LSUHSC's reason for her termination "makes no sense" because her position and salary were contained in the grant with the CDC, and, after her termination, Dr. Williams and Dr. Kaufman did not notify the CDC that she had been terminated. Importantly, Chaney does not dispute, and, in fact, readily admits, the CDC funding for the colorectal grant was reduced by $200,000, and, thus, LCP was required to make difficult decisions regarding how that grant money was to be used. Chaney's inclusion on the grant paperwork did not guarantee her a position, nor insulate her from termination. Chaney has offered no evidence that the CDC grant dedicated funding to be used only for her salary. Thus, LCP had discretion to use the grant money as they saw fit. Drs. Kaufman and Williams were the decisionmakers and they decided the best way to maximize the grant funding was to eliminate the Program Manager position because it was an added, unnecessary layer of middle management.

Chaney also argues that LSUHSC was required to notify the CDC of her termination because she was a "key" employee, and LSUHSC failed to do so. Even assuming LSUHSC was required to notify the CDC after Plaintiff's termination (a fact which is denied by Dr. Kaufman and Dr. Williams, and has not been established by Chaney by any evidence, aside from her own opinion)[81], their failure to do so has no relevance to their reasons or motivation for deciding to terminate Chaney. In other

---

[81] ROA.423, 427.

words, even if they should have notified the CDC of Chaney's termination and did not, this is not evidence that proves that they terminated her because of her race.

Shanklin-Jackson's testimony regarding Plaintiff's termination also does not establish pretext. First, and foremost, Shanklin-Jackson was Chaney's co-worker (a manager on the same level as Chaney), and was not a decisionmaker to Chaney's termination.[82] Chaney attempts to establish pretext through Shanklin-Jackson's testimony that the LCP managers were instructed during manager's meeting that if asked about Chaney's termination, they should state that Plaintiff was terminated as a part of restructuring.[83] There is absolutely nothing sinister in this instruction. Instead, Dr. Williams was instructing LCP managers to tell the truth. Indeed, Dr. Williams and Dr. Kaufman repeatedly and consistently explained their reason for terminating Chaney, i.e., they terminated her and eliminated her position as a part of a reorganization and realignment of the department.  Further, the fact that Shanklin-Jackson subjectively believed their explanation was a "lie"[84] and that Chaney should have been retained because she was a good employee is not relevant or competent evidence to establish pretext.

---

[82] ROA.419-420.
[83] ROA.749-750.
[84] ROA.750.

Chaney next argues that a prior incident involving Shanklin-Jackson establishes pretext as to the reason why Chaney was terminated.[85] The prior incident involving Shanklin-Jackson has no bearing on the decision to terminate Chaney. Shanklin-Jackson testified she was involved in a one-time incident where she was called a racial epithet; as Shanklin-Jackson admitted, the alleged incident occurred in 2016[86], three years <u>before</u> Chaney began working at LCP, and did not involve Dr. Williams or Dr. Kaufman, the decisionmakers to Chaney's termination, or anyone in LCP.[87] Thus, Shanklin-Jackson's experience is not probative of Chaney's wrongful termination claim and certainly cannot establish that LSUHSC's stated reason for terminating Chaney was untruthful or unworthy of credence.

Likewise, in her brief,[88] Chaney also points to Shanklin-Jackson's testimony that after Chaney was terminated, Dr. Kaufman told Shanklin-Jackson that Dr. Williams "did not care for" Chaney and that Dr. Williams was the reason for Chaney's termination.[89] Shanklin-Jackson's testimony was quoted out of context. In fact, Shanklin-Jackson was describing a phone call she had with Dr. Kaufman after Chaney's termination wherein Dr. Kaufman expressed that she felt bad about having

---

[85] Chaney did not make this argument to the district court, and, thus, she has forfeited it. *Rollins*, 8 F.4th at 397. Chaney previously argued Shanklin-Jackson's prior incident only in the context of her harassment claim.

[86] ROA.741.

[87] ROA.735.

[88] Again, Chaney did not raise this argument before the District Court and has thus forfeited it. *Rollins*, 8 F.4th at 397.

[89] ROA.751.

to terminate Chaney.[90] Shanklin-Jackson's testimony is clear that she believed Chaney was terminated not because of her race (or protected activity), but instead because Chaney questioned Dr. Williams's hiring Dr. Elewonibi for a faculty position and because Dr. Elewonibi was hired to replace Chaney.[91] That is partially true—Dr. Elewonibi did assume Chaney's duties and effectively replaced Chaney. At most, Shanklin-Jackson's testimony establishes another reason for the termination decision, but not a reason that is discriminatory or based on Chaney's race. In other words, Shanklin-Jackson did not testify that Dr. Kaufman told her that Dr. Williams "did not care for" Chaney <u>because of her race</u> or <u>because she is Black</u>. *See Owens*, 33 F.4[th] at 831 (holding that in order to survive summary judgment, a plaintiff must produce sufficient evidence of implausibility to permit an inference of *discrimination*, not merely an inference that the employer's proffered reason is false).

Finally, Chaney argues her positive performance evaluation is evidence of pretext.[92] LSUHSC agrees that Chaney had a satisfactory performance evaluation, however, Chaney's performance was not a factor and had nothing to do with the decision to eliminate her position. Again, her position was eliminated because of a

---

[90] ROA.749, 752.
[91] ROA.752.
[92] Chaney failed to raise this issue to the district court and has been forfeited. *Rollins*, 8 F.4th at 397.

$200,000 reduction in the CDC grant and because her position was superfluous and could be subsumed by the newly hired Principal Investigator, Dr. Elewonibi.

### 3. LSUHSC's Evidence Supports that Chaney was Not Terminated Because of her Race

The district court recognized that LSUHSC's evidence establishing the "same actor" inference and evidence concerning Chaney's replacement reinforces its position that race was not a factor in the decision to terminate Chaney.

First, LSUHSC is entitled to the rebuttable presumption that Chaney's termination was not the result of unlawful racial discrimination because the same actors made the decision to hire and terminate Chaney. *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 n. 3 (5th Cir. 1997) ("Where, as here, the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employee is created.") It is undisputed that Dr. Williams and Dr. Kaufman hired and then decided to terminate Chaney, thus the same actor inference applies.[93] Although the inference is not mandatory or irrebuttable, the inference does bolster LSUHSC's position that race was not a factor in the termination decision.

Likewise, Chaney's position was eliminated and her duties were subsumed by the Principal Investigator for the colorectal grant; Dr. Elewonibi became the Principal Investigator and performed Chaney's duties, and, thus is considered her

---

[93] ROA.112, 575.

replacement.[94] As the District Court noted, being replaced by someone in the same racial class "is certainly material to the question of discriminatory intent." *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997). Although replacing Chaney with someone in her same protected classification may not be dispositive of her claim, it is certainly relevant and, as the district court ruled, it "cuts against the inference of discrimination."[95]

### B. Chaney's Retaliation Claim

Chaney's retaliation claim is likewise subject to the *McDonnel Douglas* burden-shifting framework because she seeks to prove retaliation by circumstantial evidence. *Owens*, 33 F.4th at 835 (citing *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021). To establish a prima facie case of retaliation, Chaney must show: 1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) there is a causal connection between the two. *Id.* (citing *Saketkoo*, 31 F.4th at 998-1000). The district court held Chaney established a prima facie case, primarily relying on the fact that LSUHSC terminated Chaney a short time after Chaney first complained of discrimination.[96] Thus, the district court held that the

---

[94] ROA.421-428.
[95] ROA.1465.
[96] ROA.1473-1474.

"close timing" between the protected activity and adverse action established the causal link required to establish a prima facie case of retaliation.[97]

Likewise, as was true for the race discrimination claim, the parties do not dispute the second step of *McDonnell Douglas* framework, that LSUHSC has put forth a legitimate, nondiscriminatory reason for terminating Chaney.

Thus, the focus for this Court is "whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Owens*, 33 F.4th at 835 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)); *see also Saketkoo*, 31 F.4th at 1000-01. Establishing the "but for" cause requires a greater showing than mere causal connection; it requires that Chaney show that protected conduct was *the reason* for the adverse action. *Id.* (emphasis added). "In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." *Id.* (citing *Long*, 88 F.3d at 305 n.4).

Chaney relies upon the same evidence of pretext for her retaliation claim as her race discrimination claim. As explained, this evidence falls short of proving pretext for race discrimination, and likewise falls short of proving that the "but for"

---

[97] Although LSUHSC initially argued that Chaney lacked proof of the causal connection because Dr. Williams and Dr. Kaufman were unaware of her protected activity, LSUHSC does not appeal the district court's ruling.

cause of her termination was her protected activity. Again, Chaney has not rebutted LSUHSC's legitimate, nonretaliatory explanation for her termination.

## II.    Chaney has Forfeited Her Race Harassment Claim

Chaney's complaint asserted a harassment claim against LSUHSC alleging a hostile work environment because of Chaney's race.  The harassment claim was considered and dismissed by the district court.[98]  Chaney failed to brief any aspect of the harassment claim, and, thus, has forfeited this claim on appeal.

It is well-settled in the Fifth Circuit that an "appellant abandons all issues not raised and argued in initial brief on appeal" and that a "party who inadequately briefs an issue is considered to have abandoned the claim." *Ayorinde*, 121 F.4th at 510 (quoting *Cincel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant-Appellee respectfully request this Court affirm the district court's judgment granting summary judgment and dismissing Plaintiff Chandre Chaney's claims in their entirety. Defendant-Appellee further pray for any and all additional relief to which they are entitled under the law.

---

[98] ROA.1467-1471.

Respectfully Submitted:


**LIZ MURRILL**
**ATTORNEY GENERAL**

*/s/ Renee G. Culotta*
RENEE G. CULOTTA, T.A. (LA No. 24436)
Special Assistant Attorney General
**FRILOT L.L.C.**
1100 Poydras Street, Suite 3700
New Orleans, LA  70163
Telephone: 504-599-8085
Facsimile: 504-599-8100
Email:        rculotta@frilot.com


**COUNSEL FOR DEFENDANT-APPELLEE**
**LOUISIANA STATE UNIVERSITY HEALTH**
**SCIENCES CENTER**

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7) because this document contains **6,628** words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using **Microsoft Word 2016** in **14-point Times New Roman font**.

> */s/ Renee G. Culotta* _____
> Counsel of Record for Defendant-Appellee,
> Louisiana State University Health Sciences Center
>
> Dated: January 15, 2025

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 15, 2025, I electronically

transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF

System, for filing and for transmittal of Brief of Appellee to all counsel of record to

the following:

Joseph A. Smith, III
Smith Law Firm
830 North Street
Baton Rouge, Louisiana 70802
jasmith@jarthursmith.com
Counsel for Plaintiff, Chandre' Chaney

.

*/s/ Renee Culotta*